JOSEPH M. PREVETTE, III, AND THOMAS A. PREVETTE, SONS OF JOSEPH M. PREVETTE, DECEASED, EMPLOYEE, PLAINTIFFS v. CLARK EQUIPMENT COMPANY, EMPLOYER, LIBERTY MUTUAL INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 8210IC572

(Filed 17 May 1983)

1. Master and Servant § 71.1— average weekly wage—use of employee's short-term wages

The evidence supported a finding by the Industrial Commission that a fair and just calculation of decedent's average weekly wage was reached by use of the 5-week wage record of decedent, and the Commission did not err in failing to calculate decedent's average weekly wage by using the wages earned by another employee in a comparable job during the 52 weeks prior to decedent's injury. G.S. 97-2(5).

2. Master and Servant § 69— workers' compensation—no willful failure by employer to comply with OSHA safety regulations

The evidence did not establish that the death of an employee who fell from a pallet which was on the forks of a forklift was caused by the willful failure of defendant employer to comply with OSHA safety regulations so as to require the Industrial Commission to increase compensation for the death of the employee by 10% under G.S. 97-12. G.S. 95-129(2).

APPEAL by plaintiffs and defendants from the North Carolina Industrial Commission Opinion and Award of 10 February 1982. Heard in the Court of Appeals 19 April 1983.

This action involves a claim by plaintiffs, who are decedent's two sons, for total disability and death benefits under the Workers' Compensation Act for an injury by accident arising out of and in the course of decedent's employment on 24 October 1978, which resulted in his death on 18 December 1978. Decedent fell to the floor from a pallet which was on the forks of a forklift, eleven feet and eight inches above a cement floor.

The case was originally heard before Commissioner Coy M. Vance who filed an Opinion and Award on 18 March 1981 awarding to plaintiffs temporary total disability payments, death benefits, medical expense reimbursement, funeral expenses and attorney's fees. Upon appeal by both plaintiffs and defendants, the Full Commission on 10 February 1982 adopted as its own the Opinion and Award of Commissioner Vance. Plaintiffs and defendants filed cross-appeals to this Court from that decision.

*Pope, McMillan, Gourley & Kutteh, by William H. McMillan and David P. Parker for plaintiff appellant-cross appellees.*

*Hedrick, Feerick, Eatman, Gardner & Kincheloe by James F. Wood, III, for defendant appellee-cross appellants.*

BRASWELL, Judge.

### DEFENDANTS' APPEAL

[1] Defendants first argue that the Commission erred in its calculation of decedent's average weekly wage. The Commission based its computations upon a stipulated Form 22 Wage Chart for decedent, who had worked for defendant-employer for only five weeks. Based on this evidence, the Commission found that decedent's average weekly wage was $228.97, with a compensation rate of $152.65. Defendants argue that the Commission should have calculated the average weekly wage based on the stipulated Form 22 of Larry Sigmon, who worked in a comparable job during the previous year.

The method for calculating average weekly wage is set forth in G.S. 97-2(5), which provides in pertinent part:

". . . 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, . . . divided by 52; . . . Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community."

Defendants contend that an unfair and unjust result was reached by using the short-term wage record of decedent since decedent was working on a new second shift recently begun by defendant-employer, and since decedent had worked more overtime than usual during this period in an effort to get the stockroom more fully stocked. Defendants contend that the form which should have been used was Sigmon's, which indicates wages earned in a comparable job during the 52 weeks prior to decedent's injury. This method of computing wages is, of course, provided for in G.S. 97-2(5). However, the method used by the Commission, dividing the earnings by the shorter number of weeks, also is authorized "provided, results fair and just to both parties will be thereby obtained." The Commission specifically found as a fact that the wage chart of decedent's actual wages for weeks worked was fair and just. The Commission's findings of fact are conclusive on appeal if there was any competent evidence to support them. *Jackson v. Highway Commission,* 272 N.C. 697, 700, 158 S.E. 2d 865, 867 (1968); *Locklear v. Robeson County,* 55 N.C. App. 96, 284 S.E. 2d 540 (1981). The findings are thus binding on this Court, even though the evidence presented could possibly have supported findings to the contrary. *Searcy v. Branson,* 253 N.C. 64, 116 S.E. 2d 175 (1960).

The facts found by the Commissioner and adopted by the Full Commission support the conclusion that decedent's average weekly wage was $228.97. The second shift had been under production for a very short time and therefore the only relevant evidence of wages earned in this particular job on the newly-created second shift was decedent's record of wages actually earned. We therefore overrule this assignment of error.

Defendants next argue that the Commission erred in admitting plaintiffs' Exhibit 1 (a certified copy of the OSHA investigative file) as substantive evidence. While defendants do not contend that the OSHA record of investigation and the citation were improperly authenticated or that they were not admissible for any purpose, defendants argue that the OSHA file was not competent evidence on which to determine whether defendant-employer should be fined a 10% penalty for willful violation of OSHA safety regulations. Since we hold in the second part of this opinion that the Commission correctly concluded that there was no evidence of willful failure to comply with OSHA regulations,

error in admitting the OSHA file, if any, was harmless. We overrule this assignment of error.

PLAINTIFFS' APPEAL

[2] Plaintiffs have appealed on the issue of whether plaintiffs' evidence before the Commission established that defendant-employer willfully failed to comply with OSHA safety regulations and that therefore the Commission should have assessed a 10% penalty against defendants. G.S. 97-12 provides in part that: "[w]hen the injury or death is caused by the willful failure of the employer to comply with any statutory requirement or any lawful order of the Commission, compensation shall be increased ten percent (10%)."

Pursuant to the adoption procedure in G.S. 95-131(a), all federal occupational safety and health standards also constitute the standards in this State, unless alternative regulations are promulgated by the Commissioner of Labor. The relevant safety standard which applies to this action is 29 C.F.R. § 1910.178(m)(3) (1982): "Unauthorized personnel shall not be permitted to ride on powered industrial trucks. A safe place to ride shall be provided where riding of trucks is authorized." By virtue of G.S. 95-129(2)[1] the prohibition of employees riding on machinery such as the forklift involved here is a "statutory requirement" so as to bring this employee's death within the purview of G.S. 97-12.

Defendant-employer Clark admitted that it was aware of the prohibition of unsafe riding on powered industrial trucks. The crucial issue here is whether Clark's noncompliance was "willful." In his 18 March 1981 Opinion and Award Commissioner Vance found that:

"5. There were forklifts available to employees in the area. If supervision saw any employee riding a forklift anyplace but on the seat, they were instructed to have the employee remove himself from the forklift.

6. It was a practice by some employees to place a pallet on the forks of the forklift and raise themselves up to the

1. "Each employer shall comply with occupational safety and health standards or regulations promulgated pursuant to this Article."

proper height to get material from the bins, rather than use a ladder. If they were seen doing this by their supervisor, they were instructed to come down and use a ladder.

\*    \*    \*    \*

8. There is no evidence in this record that defendant employer has willfully failed to comply with any statutory requirement or any lawful order of the Commission."

Based upon these findings, the Commissioner concluded as a matter of law that:

"5. Plaintiffs' claim for a ten per cent penalty for defendant employer's willful failure to comply with any statutory requirement or any lawful order of the Commission is hereby DENIED."

Plaintiffs argue that Clark's payment of the citation and penalty imposed by the North Carolina Department of Labor and its failure to post written prohibitions and to impose sanctions for employees' violation of the safety requirement indicate Clark's willful failure to comply with the statutory requirements. We disagree. The citation from the Department of Labor assessed a civil penalty against Clark for a "serious," rather than a "willful," violation, pursuant to G.S. 95-138(a). "An act is wilful when there exists 'a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another,' a duty assumed by contract or imposed by law." *Beck v. Carolina Power & Light Co.*, 57 N.C. App. 373, 383-84, 291 S.E. 2d 897, 903 (1982), citing *Brewer v. Harris*, 279 N.C. 288, 297, 182 S.E. 2d 345, 350 (1971).

There was competent evidence from which the Commission could find that Clark's actions did not constitute a "willful" failure to comply with the safety regulations. Otis Snow and Paul Chamberlain, two of decedent's supervisors at Clark, testified that they had instructed employees not to ride on the forklift platforms and that when they had seen this occurring, they had stopped the riding. Decedent chose to disregard the supervisor's warning by riding on the unprotected platform. There was competent evidence to support the findings of fact and conclusions of law on this issue. Therefore, the findings are conclusive on appeal. *Jackson v. Highway Commission, supra.* G.S. 97-12 places

the burden of proof on the issue of willful disobedience of the safety regulation upon the party who claims a forfeiture. Since plaintiffs' evidence did not show that Clark violated the statute intentionally and willfully, plaintiffs failed to meet their burden of proof. We hold that the Commission did not err in denying imposition of the penalty against defendants.

For the foregoing reasons, the Opinion and Award appealed from is

Affirmed.

Judges WEBB and WHICHARD concur.